UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LOUIS E. deBROIZE,

        Plaintiff,

  -vs-                               5:99-CV-0904
                                              (NAM/DEP)

BRUCE BRADIGAN, as Director of Operations
at Central New York Psychiatric Center,

        Defendant.

---

**APPEARANCES**                                      **OF COUNSEL**

NORMAN P. DEEP, ESQ.
*Attorney for Plaintiff*
54 Dwight Avenue
Clinton, New York 13323

ELIOT SPITZER                                  Roger W. Kinsey, Esq.
Attorney General of the State of New York     Assistant Attorney General
The Capitol
Albany, New York 12224

**NORMAN A. MORDUE, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

     This matter has been the subject of two previous decisions, and the parties' familiarity with the facts and procedural history is assumed. Briefly, plaintiff, a psychologist employed by the New York State Office of Mental Health ("OMH"), alleges that after he testified on behalf of a patient who had sued the New York State Department of Corrections ("DOCS"), his own employer retaliated against him by removing him from participation in the Forensic Extra

Services Program ("FESP").[1] In *Muller v. Costello,* 997 F. Supp. 299 (N.D.N.Y. 1998), *aff'd* 187 F.3d 298 (2d Cir. 1999), the plaintiff was a DOCS corrections officer who claimed he was intentionally discriminated against by the state agency in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*. Specifically, Muller alleged that when he complained about second-hand smoke in his workplace which aggravated his reactive airway disease and asked for duties which would not expose him to this health hazard, he was discharged in violation of the ADA. Plaintiff in the present case testified at the trial regarding his therapy sessions with Muller, Muller's mental health and Muller's concerns about the problems he was having at work. The case was submitted to a jury which then returned a verdict in favor of Muller on both the discrimination and retaliation claims. Thereafter, the trial court ordered DOCS to reinstate Muller and provide him with a smoke-free work environment.

In a previous decision, *deBroize v. New York State,* 2001 WL 1217192, 22 NDLR P 24 (N.D.N.Y. Sept. 21, 2001) (NO. 99-CV-0904), this Court granted motions to dismiss all of plaintiff's claims on two grounds: 1) the Eleventh Amendment barred the ADA claims against the State of New York, OMH, DOCS and defendant Bradigan, a state employee, for acts Bradigan allegedly committed in his official capacity; and 2) the remaining ADA claim against defendant Bradigan in his personal capacity was barred because the ADA applies only to employers, not individual defendants. There, however, the Court also granted plaintiff's request to amend his pleading to add a claim against defendant Bradigan individually under 42 U.S.C. § 1983.

---

[1] The FESP is a program in which OMH employees, in addition to their regular duties with OMH, visit prisons administered by "DOCS" and provide counseling to inmates and DOCS employees. Participants in the FESP program receive additional wages in connection with their additional DOCS duties.

Plaintiff filed a second amended complaint which again set forth an unlawful retaliation claim under the ADA against the same defendants referenced in his original complaint in nearly identical terms as the first amended complaint. Plaintiff also alleged a second cause of action against defendants premised on 42 U.S.C. § 1983. Therein, plaintiff alleged that defendants violated his right of free speech under the First Amendment and his right of equal protection under the Fourteenth Amendment by retaliating against him for his testimony in the *Muller* case. In June 2004, the Court granted a motion to dismiss the first cause of action against all defendants for the reasons stated in the Court's September 2001, Memorandum-Decision and Order, but denied defendant Bradigan's motion to dismiss plaintiff's claim against him based on 42 U.S.C. § 1983.

## II. DISCUSSION

A.  Applicable Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the

nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion. *Western World Ins. Co. v. Stack Oil*, 922 F.2d 118, 121 (2d Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that nonmoving party must do more than merely show "some metaphysical doubt" as to material facts to escape summary judgment). It is with these considerations in mind that the Court addresses defendant's motion for summary judgment.

B.     Plaintiff's Claim under 42 U.S.C. § 1983

Plaintiff asserts that he was retaliated against after exercising his right to free speech under the First Amendment by testifying for Muller and denied equal protection of the law under the Fourteenth Amendment. In order to state a cause of action for infringement of First Amendment rights under 42 U.S.C. § 1983, plaintiff must allege that: 1) his speech was constitutionally protected; 2) he suffered an adverse employment action; and 3) there is a causal connection between his speech and the adverse employment action such that the speech is determined to have been a motivating factor in the adverse employment decision. *See Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir. 1999). To adequately state a claim for denial of equal protection rights under the Fourteenth Amendment, plaintiff must allege that compared with similarly situated individuals, he was selectively treated adversely and that the selective treatment was motivated by an impermissible consideration such as race, religion or an attempt to inhibit the exercise of constitutional rights. *See Zahra v. Town of Southhold,* 48 F.3d 674, 683 (2d Cir. 1995).

The Court notes that it is not at all clear that plaintiff's testimony in the *Muller* case amounted to protected constitutional speech or that he actually suffered an adverse employment action in this case. Nevertheless, even assuming without deciding for the purpose of the present motion that plaintiff has met the first two prongs of the test for infringement of his First Amendment rights under 42 U.S.C. § 1983, this claim is still legally deficient for failure to satisfy the third prong of establishing a causal connection between the alleged protected speech and retaliatory action. Upon review of the second amended complaint in this case, this Court noted previously:

> The second amended complaint is essentially bereft of factual allegations which clarify the bases of plaintiff's constitutional claims. Indeed, there are no factual assertions which establish any connection or communication between persons employed by DOCS who would have been aware of or affected by plaintiff's testimony during the *Muller* trial and his supervisor at OMH who made the decision to not renew plaintiff's participation in the FESP. Plaintiff is apparently basing his claims on allegations that the *Muller* case was so "high profile" and his testimony was so damaging that it **must** have influenced OMH's decision. While plaintiff must ultimately rely on more than rank speculation and conjecture to establish a material evidentiary question on these constitutional claims, he has adequately pleaded them for the purpose of the present motion.

It appears from review of the evidence submitted by plaintiff in opposition to defendant's summary judgment motion that although he has been afforded adequate time and opportunity to conduct discovery in this case, he still has nothing upon which to base his claims other than "rank speculation and conjecture."

During his deposition, plaintiff was asked to describe how he was treated differently by his employer following his testimony in *Muller*:

> I can't say I was fully aware of being treated differently but I was a lot more circumspect about how I was being treated. I was evaluative

5

> about why people would say certain things. I would say I was more cautious and more suspicious.
>
> * * *
>
> I don't know. I don't know but I ask a lot more questions about how people were treating me because I was just aware that something could happen and hence the beginning of the documentation.
>
> * * *
>
> At this moment in time there is nothing specific I can think about but if there is something I can think about I certainly will make you aware of it.

*See* plaintiff's deposition, pp. 87-88. Indeed, it appears from plaintiff's deposition testimony that when OMH advised him that his FESP contract would not be renewed for the 1998-99 year, he did not initially think it was significant:

> Q. Do you see in the second line where it starts "This news [Plaintiff's nonselection for 1998-1999 FESP] was initially uneventful"?
>
> A. Yes.
>
> Q. Would you explain what you meant when you said that?
>
> A. We had - - I think when it comes to the end of the year people talk about a budget, a shrinking budget the end of the fiscal year and I thought that people will be letting me go because they wanted to just give other people a chance and I thought it was a reasonable explanation until I started thinking and connecting that to the possibility of what I had been concerned about all the time and that's the retaliation.
>
> Q. You had concern about the retaliation all the time - -
>
> A. All the time. Ever since I testified. I told you that I was a lot more circumspect and vigilant about whether things will be the same after I testified.
>
> Q. Did anything cause you to be more circumspect and vigilant?
>
> A. Just the fact that I testified and my understanding was I had to be careful because people can retaliate - -
>
> * * *

6

> Q. You said everywhere you went people knew you weren't renewed. I thought you said they were silent.
>
> A People knew about it but they are silent.
>
> * * *
>
> Q. But nobody said anything to you directly as I understand it. Correct?
>
> A. Yeah.

*See* plaintiff's deposition, pp. 97-98.  Other than self-serving theories, plaintiff can point to no connection whatsoever between his testimony in *Muller* and his non-selection for the FESP six months later.

The same absence of evidence demonstrating a connection between plaintiff's allegedly damaging testimony against DOCS in the *Muller* case and his own agency's failure to renew his FESP contract precludes a determination that plaintiff has adequately set forth a claim for denial of Equal Protection rights secured by the Fourteenth Amendment.  Plaintiff continually argues that the *Muller* case was "high profile" and thus asks the Court to assume that officials at OMH, a separate entity altogether than DOCS, would have both known of plaintiff's involvement in the case and been thereby influenced in their decision to give other employees a chance to participate in the FESP work.  Though DOCS and OMH are two entirely distinct state agencies with completely separate administrations, plaintiff argues it would not be "inconceivable" that officials in the two agencies might discuss plaintiff's testimony or "share common knowledge concerning employees."

In fact, defendant Bradigan acknowledges that he knew plaintiff had testified in a trial during the fall of 1997, but he did not "know anything about the specifics of the case he testified in, other than that it was a case involving DOCS," nor did he have any knowledge of the nature of plaintiff's testimony.  Plaintiff asks the Court to conclude from Bradigan merely knowing that

7

plaintiff testified in a case involving DOCS that Bradigan must have talked to officials at DOCS, discovered that plaintiff's testimony was apparently helpful to Muller in his trial and then decided to use his position of authority at OMH to punish plaintiff for testifying against a fellow state agency. Indeed, plaintiff's attorney argues that "plaintiff, though he may not hold direct evidence, contends that the totality of the circumstances surrounding defendant's refusal to reinstate plaintiff to the FESP clearly demonstrate that the finders of fact could find a retaliatory motive on the part of the defendant, even if they feel said motive is not the sole cause." Assuming the truth of these wholly speculative statements on the part of plaintiff, there is no proof in the record which demonstrates that plaintiff's brief testimony in the *Muller* trial was a motivating factor or even a consideration in defendant's mind when he declined to renew plaintiff's FESP contract.

## III.   CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is GRANTED, and the plaintiff's complaint is hereby dismissed.

IT IS SO ORDERED.

Dated: September 26, 2006
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge

8